JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. SACV 14-0307-DOC (DFMx)        Date: September 24, 2014

Title: DONALD OKADA V. NEVADA PROPERTY 1, LLC

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Deborah Goltz | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**    **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT NEVADA PROPERTY 1 LLC'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TRANSFER VENUE [26]**

Before the Court is Defendant Nevada Property 1's ("NP1's") Motion to Dismiss, or, in the Alternative, Transfer Venue (Dkt. 26). Having considered the written submissions, the Court GRANTS in part and DENIES in part NP1's Motion.

### I. Background

The following facts are contained in Plaintiff Donald Okada's ("Mr. Okada's") First Amended Complaint (FAC) (Dkt. 23), and are construed in a light most favorable to him.

#### A. Mr. Okada's Contract Dispute with NP1

Mr. Okada entered into a purchase agreement with 3700 Associates, NP1's predecessor, and paid an advance deposit for a condominium in the Cosmopolitan property ("Cosmopolitan") on the Las Vegas Strip. FAC ¶¶ 14-15. 3700 Associates told

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-0307-DOC (DFMx)                      Date: September 24, 2014

                                                                                                                                                                  Page 2

Mr. Okada that his condominium would be constructed by early 2008. *Id.* ¶ 16. In 2008, 3700 Associates defaulted on its construction loan, as a result of which, Deutsche Bank foreclosed on the Cosmopolitan and formed NP1 to continue developing the project. *Id.* ¶¶ 18-20.

In February 2009, other Cosmopolitan purchasers filed class actions against NP1 and Deutsche Bank because the Cosmopolitan was not finished within the timeframe provided by the purchase contracts. *Id.* ¶ 24. These actions settled, and class members terminated their contracts and received partial refunds of their advance deposits. *Id.* ¶ 26. Mr. Okada opted out of the class action settlements because he still wanted to own a condominium at the Cosmopolitan. *Id.* ¶¶ 27-28.

In 2010, NP1 offered a deal to purchasers who had opted out of the class action settlements: in exchange for a release on all claims against NP1 regarding the purchase agreement, NP1 would provide an accord and satisfaction in which the purchasers could rescind their purchase contract and receive a 75% refund of their advance deposit. *Id.* ¶ 38. Mr. Okada declined the accord and satisfaction because he still wanted to own a condominium in the Cosmopolitan. *Id.* ¶ 55. Mr. Okada alleges that his decision to opt out of the accord and satisfaction was influenced by NP1's representations that it was constructing the Cosmopolitan as originally planned, marketed, and advertised. *See id.* ¶¶ 48-54.

In late 2010, Mr. Okada informed NP1 that he wished to terminate his purchase contract because he was concerned about the construction's timeliness and the effects of the legal settlements on the project. *Id.* ¶¶ 74, 76. At that time, NP1 was no longer offering the accord and satisfaction, and refused to refund Mr. Okada's deposit. *Id.* ¶ 76. NP1 noticed Mr. Okada that his closing date would be June 28, 2011. *Id.* ¶ 78. The next day, June 29, 2011, NP1 declared Mr. Okada in default of the purchase agreement and eventually initiated arbitration against him to retain his advance deposit as liquidated damages for breach of the purchase agreement. *Id.* ¶ 79. The arbitration resulted in an award for NP1, allowing it to retain Mr. Okada's deposit as well as approximately $150,000 in attorney's fees. *Id.* ¶¶ 81-82. Subsequently, a Nevada court confirmed the arbitration award and entered judgment against Mr. Okada. Decl. of Matthew Lalli, (Dkt. 10) Att. 2, Ex. G ("Order granting NP1's Motion to Confirm Arbitration Award and for Entry of Judgment").

### B. Allegations of NP1's Fraudulent Conduct

In 2013, Mr. Okada heard that, based on the 2012 testimony of a former NP1 employee and whistleblower, Todd Mastej, the representations that NP1 made in phone

calls and letters regarding its plan to construct the Cosmopolitan as originally planned were materially false and misleading at the time they were made. FAC ¶¶ 56, 66, 72. Particularly, Mr. Okada alleges that at the time NP1 represented that the Cosmopolitan was being constructed as originally planned, it had already made cost-saving modifications that reduced the level of luxury. *See id.* ¶¶57-65. Mr. Okada alleges that he would have accepted the offer of accord and satisfaction if he had known about these changes. *Id.* ¶ 73. Finally, Mr. Okada alleges that he was damaged by approximately $400,000 due to NP1's deception and the fraudulent scheme perpetrated by NP1 and Deutsche Bank. *Id.* 84.

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, this court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by* 307 F.3d 1119, 1121 (9th Cir. 2002). The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

A motion to dismiss under Rule 12(b)(6) cannot be granted based upon an affirmative defense unless that "defense raises no disputed issues of fact." *Scott v.*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-0307-DOC (DFMx)                        Date: September 24, 2014

                                                                                                                       Page 4

*Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). For example, a motion to dismiss may be granted based on an affirmative defense where the allegations in a complaint are contradicted by matters properly subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010). In addition, a motion to dismiss may be granted based upon an affirmative defense where the complaint's allegations, with all inferences drawn in Plaintiff's favor, nonetheless show that the affirmative defense "is apparent on the face of the complaint." *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2009).

       Additionally, the court may take judicial notice of certain items without converting the motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). For instance, the court may take judicial notice of facts "not subject to reasonable dispute" because they are either: "(1) [] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that the court may take judicial notice of "undisputed matters of public record").

       Dismissal with leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2) This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

### III. Discussion

#### A. Preclusion

       In applying res judicata and collateral estoppel to an arbitration proceeding, the Court must examine the record, including any findings of the arbitrators. *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1321 (9th Cir. 1992). An arbitral award can have claim or issue preclusive effects where the party asserting preclusion "shows with clarity and certainty what was determined by the prior judgment." *Id.* at 1321. However, "[i]t is not enough that the party introduce the decision of the prior court; rather, the party must introduce a sufficient record of the prior proceeding to enable the trial court to pinpoint the exact issues previously litigated." *Id.* (quoting *United States v. Lasky*, 600 F.2d 765,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-0307-DOC (DFMx)                                 Date: September 24, 2014

                                                                                                                Page 5

769 (9th Cir. 1979), *cert. denied*, 444 U.S. 979 (1979). Finally, because claim and issue preclusion are affirmative defenses, NP1 bears the burden of establishing that they apply. *See Sathianathan v. Smith Barney, Inc.*, 2004 WL 3607403, at *4 (N.D. Cal. 2005).

      **1. Res Judicata**

      NP1 argues that Mr. Okada's claims are precluded by the prior arbitration proceeding between the two parties. Mot. at 6-7. The arbitration resulted in an award in favor of NP1, which a Nevada state court subsequently confirmed. *Id.*; Decl. of Matthew Lalli (Dkt. 10), Att. 2, Ex. H ("Award of Arbitrator"); Decl. of Matthew Lalli, (Dkt. 10), Att. 2, Ex. G ("Order Granting NP1's Motion to Confirm Arbitration Award and for Entry of Judgment"). Additionally, NP1 argues that to the extent Mr. Okada raises new legal theories in the present case, those claims were compulsory counterclaims that should have been raised in arbitration, and now have been waived. Mot. at 10-11. Mr. Okada contends that it was impossible for him to have raised those claims during arbitration because he did not know about NP1's fraudulent statements until after arbitration proceedings concluded. *See* FAC ¶ 80; Opp'n at 9.

      Claim preclusion, or res judicata, bars all grounds for recovery that could have been asserted, whether they were or not, in a prior suit between the same parties on the same claim. *McClain v. Apodaca*, 793 F.2d 1031, 1033 (9th Cir. 1986). A federal court sitting in diversity must apply the res judicata law of the state in which it sits. *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982) *cert. denied*, 459 U.S. 1087 (1982) (applying California law). Therefore, in determining whether successive lawsuits involved the same claim, we consider: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. *Clark*, 966 F.2d at 1320 (citing *Costanini*, 681 F.2d at 1201-02) (applying California law). "Although the last factor is the most important, '[n]o single criterion can decide every res judicata question,' and this Court should not apply the factors mechanically." *Sathianathan*, 2004 WL 3607403, at *5 (quoting *Costantini*, 681 F.2d at 1201-02).

      "Res judicata bars only those grounds for recovery which could have been asserted in the prior litigation." *Clark*, 966 F.2d at 1321 (citing *McClain*, 793 F.2d at 1033). No judicial interest is served by barring claims that could not have been previously asserted. *Id.* Viewing Mr. Okada's allegations in the light most favorable to him, his claims are not precluded since he did not learn about Mr. Mastej's statements about NP1's fraudulent conduct until after arbitration concluded, and therefore could not have asserted this

affirmative defense during arbitration. *See* FAC ¶ 56; *Clark*, 966 F.2d at 1321. In this Court's Order Granting Motion to Dismiss (Dkt. 15), in which we denied NP1's Motion to Dismiss with respect to the claim preclusion argument, this Court urged Mr. Okada to "clarify the precise timing of when he found out about the allegedly fraudulent statements." Order (Dkt. 15) at 7. He has done this. *See* FAC ¶¶ 71, 72 (alleging that Mr. Okada first learned of Mr. Mastej's testimony on August 26, 2013, and obtained a copy of said testimony on November 4, 2013).

Accordingly, the Court DENIES NP1's Motion to Dismiss with respect to the claim preclusion argument.

### 2. Collateral Estoppel

NP1 also argues that Mr. Okada's claims are precluded because the issues between the two parties were resolved by a final arbitral award. *See* Mot. at 8-9. Mr. Okada argues that his claims are not barred because the issues raised in the present lawsuit differ from those he raised and lost on in arbitration. *See* Opp'n at 11-14.

The doctrine of issue preclusion, or collateral estoppel, bars re-litigation of issues actually litigated and necessary to the outcome of the first action in subsequent suits based on a different claim. *See Montana v. United States*, 440 U.S. 147, 153 (1979). In diversity cases, the Ninth Circuit applies the issue preclusion rules of the forum state. *Jacobs v. CBS Broad., Inc.*, 291 F.3d 1173, 1177 (9th Cir. 2002); *Pardo v. Olson & Sons, Inc.*, 40 F.3d 1063, 1066 (9th Cir. 1994).

Under California law, issue preclusion prohibits re-litigation of issues decided in a prior proceeding if: "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000) (quoting *Younan v. Caruso*, 51 Cal. App. 4th 401, 406-407 (1996)). Additionally, under California law the party asserting collateral estoppel bears the burden of establishing these requirements. *Hydranautics*, 204 F.3d at 885.

An arbitration decision can have collateral estoppel effect. *Clark*, 966 F.2d at 1321, (citing *C.D. Anderson & Co., Inc. v. Lemos*, 832 F.2d 1097, 1100 (9th Cir. 1987)). In applying collateral estoppel to an arbitration proceeding, the court must examine the record to evaluate whether a rational factfinder could have reached the same conclusion based upon an issue other than the one in question. *Clark*, 996 F.2d at 1321. When the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-0307-DOC (DFMx)                                            Date: September 24, 2014

                                                                                                                                                                                     Page 7

issue is the only one the arbitrator reasonably could have used to reach the decision, the issue is foreclosed. *Id.*

     NP1 is incorrect in contending that collateral estoppel applies in the present matter. Mr. Okada is not attempting to relitigate any issue previously decided in arbitration. A review of the arbitration documents reveals that Mr. Okada did, in fact, employ many of the same allegations present in his First Amended Complaint during arbitration. *See* Def.'s Req. Judicial Notice, Ex. N (Interim Award of Arbitrator) at 6-10, 15-20. Nevertheless, the arbitration merely concluded that the changes in the amenities did not "substantially and adversely" affect Mr. Okada, nor did they amount to a material breach in the purchase agreement. *Id.* at 18-20. In the present action it is immaterial whether these changes constituted a breach; Mr. Okada's claim is based not on the lack of conformity of NP1's alleged representations with the purchase agreement, but rather on the nonconformity of those representations with the construction that was actually taking place. *See* FAC ¶¶ 49, 53, 58-65. As Mr. Okada points out, the arbitrator did not determine whether NP1 had made misrepresentations to him. Opp'n at 13.

     Because the issues Mr. Okada asserts in this lawsuit are not identical to those issues litigated in arbitration, the Court DENIES NP1's Motion to Dismiss with regard to its collateral estoppel argument.

### B. Fraud

     Mr. Okada alleges that NP1 engaged in fraudulent conduct when it made false and misleading representations that the Cosmopolitan would be built as planned, marketed, and advertised. FAC ¶¶ 49, 53. Specifically, Mr. Okada alleges mail and wire fraud. *Id.* ¶ 105. NP1 argues that Mr. Okada does not allege fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure ("FRCP"). Mot. at 11-12. The Court disagrees.

     Rule 9(b) states that an allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the allegedly fraudulent activity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The complaint must also specify facts such as "times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). In addition, the allegation "must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106 (quoting *Decker v. Glenfed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994)). Rule 9(b)'s heightened pleading standard applies not only to federal claims, but also to state

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-0307-DOC (DFMx)                                           Date: September 24, 2014

                                                                                                                      Page 8

law claims brought in federal court. *Id.* at 1103. This heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

However, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Neubronner*, 6 F.3d at 672 (explaining that Rule 9(b)'s heightened pleading standard may be relaxed when the allegations of fraud relate to matters particularly within the opposing party's knowledge, such that a plaintiff cannot be expected to have personal knowledge).

The elements of a California fraud claim are: (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996). The plaintiff must plead "that the defendant thereby intended to induce the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff actually and justifiably relied upon the defendant's misrepresentations in acting to his detriment." *Conrad v. Bank of Am.*, 45 Cal. App. 4th 133, 157 (1996).

### 1. Misrepresentation

Mr. Okada alleges that in 2009, NP1 "declined to install the type of acoustic insulation (i.e., sound-dampening) materials expected of a luxurious condominium resort," FAC ¶ 57; "removed all condo cook tops and terminated power to them so that hotel amenity trays could be installed in their place," *Id.* ¶ 58; "installed dead-bolts on laundry closet doors inside the condominiums," *Id.* ¶ 59; "constructed pass-through doors inside many condominium units, which connected units with adjacent units," *Id.* ¶ 60; "downgraded the quality and type of windows that were to be installed inside the condominium units," *Id.* ¶ 61; "eliminated the beach club with the sandy beach wave pool," *Id.* ¶ 62; "eliminated the 1,800 seat theater and instead added space for conventions," *Id.* ¶ 63; and "changed the layout of the Cosmopolitan's casino so that it was no longer at the center of the development but was placed just off the street instead." *Id.* ¶ 64. Many of the amenities that were allegedly modified in 2009 were used previously by 3700 Associates to advertise and market the Cosmopolitan. *See id.* ¶¶ 7-11. Additionally, Mr. Okada alleges that in 2009, NP1 refused to re-sell any of the units to interested parties after the original buyers accepted the accord and satisfaction. *Id.* ¶ 67.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-0307-DOC (DFMx)                                    Date: September 24, 2014

                                                                                                                                                     Page 9

However, according to the allegations, in December 2009, NP1 mailed a newsletter "touting the sandy beach wave pool amenity" at the Cosmopolitan. *Id.* ¶ 62. In addition, NP1's agents telephoned Mr. Okada on multiple occasions from January to September 2010, and "repeatedly confirmed to [Mr. Okada] that [NP1] was continuing to build out the Cosmopolitan as a luxury condominium project as planned, marketed and advertised . . . by 3700 Associates." *Id.* ¶¶ 48-49, 115. Mr. Okada alleges that these representations were false because by the time they were made, NP1 "already knew that the prior condominium hotel regime plans drawn up by 3700 Associates would not happen." *Id.* ¶ 69. In addition, NP1 sent Mr. Okada a letter dated March 29, 2010, in which it stated that the Cosmopolitan was being constructed as originally planned. *Id.* ¶ 53.

In California, "[t]he suggestion, as a fact, of that which is not true, by one who does not believe it to be true" constitutes intentional misrepresentation. Cal. Civ. Code § 1710(1). Mr. Okada alleges that NP1 agents contacted him on multiple occasions in 2010 and represented that the Cosmopolitan would be constructed "as planned, marketed and advertised" by 3700 Associates. FAC ¶ 48-50, 115. He also alleges that those representations were false because in 2009 NP1 had already made changes to the Cosmopolitan as advertised by 3700 Associates. *See* FAC ¶¶ 57-64.

The allegations of misrepresentation are sufficient under the heightened 9(b) pleading standard. *See Vess*, 317 F.3d at 1106; *Neubronner*, 6 F.3d at 672. Mr. Okada alleges that NP1's agents made the misrepresentations to him on multiple occasions from January 2010 to September 2010 while he was in Orange County, California. FAC ¶¶ 48-50, 62, 115. The purpose of the heightened pleading standard is to ensure that "allegations of fraud are specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen*, 780 F.2d at 731. Here, Mr. Okada alleges that the misrepresentations were made during telephone conversations with NP1's agents from January to September 2010, FAC ¶¶ 48-50, 115, and via a newsletter distributed by NP1 in December, 2009. *Id.* ¶ 62. Furthermore, Mr. Okada alleges that NP1 sent him a letter containing misrepresentations on March 29, 2010. *Id.* ¶ 53. These allegations are specific enough to allow NP1 to discover the necessary information so that they can defend against the charge.

        **2. Scienter**

Mr. Okada also sufficiently alleges that NP1 had knowledge of the falsity of the misrepresentations. As previously mentioned, Mr. Okada alleges that in 2009, NP1 made several modifications to the amenities at the Cosmopolitan, including the removal of the

Case 8:14-cv-00307-DOC-DFM Document 35 Filed 09/24/14 Page 10 of 16 Page ID #:1461

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-0307-DOC (DFMx)                             Date: September 24, 2014

Page 10

beach club with the sandy beach wave pool, *Id.* ¶ 62, and the 1,800 seat theater, *Id.* ¶ 63, as well as the relocation of the casino. *Id.* 64; *see also id.* ¶¶ 57-61 (detailing other alleged changes made to the Cosmopolitan in 2009). These allegations make it clear that NP1 knew that it was not constructing the Cosmopolitan as planned, marketed, and advertised when it contacted Mr. Okada in 2010 and represented that it was. In addition, Mr. Okada specifically alleges that NP1 had knowledge of the falsity of the representations. *See, e.g., id.* ¶¶ 121-123.

Rule 9(b) makes it clear that allegations of knowledge may be made generally and not according to the heightened standard. Fed. R. Civ. P. 9(b); *see also Neubronner*, 6 F.3d at 672 (explaining that Rule 9(b)'s heightened pleading standard may be relaxed when the allegations of fraud relate to matters particularly within the opposing party's knowledge, such that a plaintiff cannot be expected to have personal knowledge). Therefore, Mr. Okada's allegations that NP1 had knowledge of the falsity of the misrepresentations are sufficient to meet the Rule 9(b) standard.

### 3. Intent to Defraud

Similar to allegations of knowledge, allegations of intent are also not subject to the heightened pleading standard set forth in Rule 9(b) and may be alleged generally. *See* Fed. R. Civ. P. 9(b). Mr. Okada cannot be expected to have personal knowledge of NP1's intent. *See Neubronner*, 6 F.3d at 672. Still, he alleges that NP1 had its agents make the misrepresentations so that those who had opted out of the class action settlements and still wanted to own condominiums at the Cosmopolitan would not accept 75% of their deposits and abandon their contracts. FAC ¶ 124. This was done, Mr. Okada alleges, to rid NP1 of opt-outs who still intended to sue, without losing the money of those who still wanted to own a condominium at the Cosmopolitan. *Id.* ¶¶ 43-47. These allegations are sufficient to show intent to defraud.

### 4. Justifiable Reliance

Although on multiple occasions Mr. Okada states that he "reasonably relied" on NP1's representations, *see, e.g., id.* ¶¶ 51, 54, 132, the question of whether his reliance was "reasonable" or "justifiable" is a legal conclusion and, therefore, this Court need not accept such allegations as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Mr. Okada does, however, also allege that had he known about the changes to the Cosmopolitan already made by NP1, he would have accepted NP1's offer of accord and satisfaction. *Id.* ¶¶ 73, 131. Furthermore, he states that he believed in the representations and assumed that they were truthful. *Id.* ¶ 54.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-0307-DOC (DFMx)                          Date: September 24, 2014

                                                                                                                                                                                            Page 11

       A review of the allegations and other documents that have been submitted for judicial notice makes it somewhat questionable as to whether his reliance was, in fact, justifiable. *See, e.g.*, *id.* ¶ 53 (alleging that the March 29, 2010, letter specifically stated that "[w]hether the project will include a condominium hotel regime with separate Unit owners depends on whether Unit purchasers perform under their contracts"). However, the question of whether reliance was justifiable is a question for the trier of fact unless "reasonable minds can come to only one conclusion based on the facts." *Aliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995). This is not such a case.

       The allegations that Mr. Okada believed in the representations made by NP1 agents over the telephone and via mail and that he would have accepted NP1's refund offer had he known of their falsity are sufficient to allege that Mr. Okada acted in justifiable reliance.

       **5. Damage**

       Mr. Okada alleges that because he believed in the misrepresentations, he was "deprived of his opportunity to collect $105,000 as a partial refund to his deposit." *Id.* ¶ 77. Additionally, he was forced to pay $150,000 in opposing attorney's fees and $150,000 in his own attorney's fees incurred during the arbitration that resulted from his breach of contract with NP1. *Id.* ¶¶ 82-83.

       For the reasons explained above, the Court holds that Mr. Okada's allegations of fraud meet the standard set forth by Rule 9(b). Therefore, this Court DENIES NP1's Motion to Dismiss with regard to Mr. Okada's claim for fraud under California Civil Code § 1709.

       **C. Negligent Misrepresentation**

       Mr. Okada alleges that NP1 negligently misrepresented the manner in which it planned to finish constructing the Cosmopolitan in both phone calls and letters. FAC ¶¶ 135, 141-143, 147. NP1 argues that Mr. Okada's claim for negligent misrepresentation is insufficiently pleaded because there is no "misrepresentation of a past or existing material fact." Mot. at 19. The Court disagrees with NP1.

       The elements of negligent misrepresentation are (1) misrepresentation of a past or existing material fact; (2) without reasonable grounds for believing it to be true; (3) with the intent to induce another's reliance on the misrepresented fact; (4) ignorance of the truth and justifiable reliance by the party to whom the misrepresentation was directed; and (5) damages. *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986). Thus, the elements

Case 8:14-cv-00307-DOC-DFM Document 35 Filed 09/24/14 Page 12 of 16 Page ID #:1463

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 14-0307-DOC (DFMx)                             Date: September 24, 2014

Page 12

of the tort of negligent misrepresentation are similar to the elements of fraud, but negligent misrepresentation does not require the intent to deceive or defraud. *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003). In other words, a defendant who makes a misrepresentation of a material fact—even if he believes it to be true, but lacks reasonable grounds for such belief—may be liable for negligent misrepresentation. *Id.* at 174.

NP1 contends that the claim for negligent misrepresentation should be dismissed because it "requires a misrepresentation of a past or existing material fact, which Okada cannot prove." Mot. at 19 (internal citation omitted). However, as previously discussed, Mr. Okada properly alleges the misrepresentation of a material fact. Therefore, the Court DENIES NP1's motion to dismiss this claim.

### D. Unfair Competition

Mr. Okada also alleges that NP1 engaged in fraudulent business practices under California's Unfair Competition Law ("UCL"). FAC ¶ 153. NP1 argues that Mr. Okada's claim asserting violations of the UCL is insufficiently pleaded. Mot. at 19.

The UCL provides relief for "unfair competition," which is defined as "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200; *Zhang v. Super. Ct.*, 57 Cal. 4th 364, 370 (2013); *Cel-Tech Commc'n, Inc, v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Mr. Okada alleges that NP1's actions violated California's fraud statute and federal RICO statutes. FAC ¶ 153.

"To state a claim for fraud under the UCL, a plaintiff must show that 'reasonable members of the public are likely to be deceived' by the alleged" fraudulent business practice. *Martinez v. Welk Group, Inc.*, 907 F. Supp. 2d 1123, 1140 (S.D. Cal. 2012) (quoting *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010)). "'[I]n order to be deceived, members of the public must have had an expectation or an assumption about' the matter at hand." *Id.* (quoting *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1275 (2006)). A plaintiff must "ultimately produce 'evidence showing a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.'" *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 920 (N.D. Cal. Aug. 5, 2013) (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008)).

Additionally, UCL claims for fraud are subject to the heightened pleading standard of Rule 9(b). *See, e.g.*, *Ware v. Bayview Loan Servicing, LLC*, No. 13-CV-1310 JLS(NLS), 2013 WL 6247236, at *8 (S.D. Cal. Oct. 29, 2013) (citing *Pirozzi*, 966 F.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-0307-DOC (DFMx)                              Date: September 24, 2014
                                                                                                                       Page 13

Supp. 2d at 916-17); *Baltazar v. Apple, Inc.*, No. CV-10-3231-JF, 2011 WL 588209, at *3 (N.D. Cal. Feb. 10, 2011).

As previously mentioned, Mr. Okada's allegations that NP1's conduct was fraudulent meet Rule 9(b)'s heightened pleading standard. However, Mr. Okada fails to successfully allege the likelihood that the fraudulent behavior confounded an appreciable number of reasonably prudent purchasers. *See Pirozzi*, 966 F.Supp. 2d at 920. Mr. Okada merely alleges that "[a]n appreciable number of reasonably prudent purchasers would have justifiably relied upon [NP1]'s misrepresentations." FAC ¶ 165. This is just the sort of "threadbare recital[] of a cause of action's elements, supported by conclusory statements" prohibited by *Iqbal*, and cannot, therefore, be considered acceptable. *See Iqbal*, 556 U.S. at 663.

Because Mr. Okada's allegation that NP1 violated the UCL based on fraudulent conduct is insufficient and he failed to allege facts that NP1's conduct was otherwise "unfair" or "unlawful," his complaint fails to state a claim. Accordingly, the Court GRANTS NP1's motion to dismiss with regard to Mr. Okada's claim for unfair competition and DISMISSES Mr. Okada's claim WITHOUT PREJUDICE.

### E. Civil RICO

To state a claim for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), a plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *See Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1117 (9th Cir. 1999) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). To state a claim for violation of 18 U.S.C. § 1962(d), a plaintiff must plead that the defendants conspired to engage in a RICO violation. *See id.* at 1117.

Under RICO, an "enterprise" consists of "an ongoing organization, formal or informal" that "function[s] as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *accord* 18 U.S.C. § 1961(4). While the RICO enterprise "is an entity separate and apart from the pattern of activity in which it engaged," *id.*, "an associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise" and need not have an ascertainable "structure beyond that necessary to carry out its racketeering activities." *Odom v. Microsoft Corp.*, 486 F.3d 541, 551-52 (9th Cir. 2007). A single entity cannot simultaneously be the "enterprise" and the "person" sued for allegedly violating RICO. *Chang v. Chen*, 80 F.3d 1293, 1298 (9th Cir. 1996), *overruled on other grounds by* 486 F.3d 541. Regarding the fourth element of RICO, "racketeering activity" consists of acts that are indictable under certain specified

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-0307-DOC (DFMx)                              Date: September 24, 2014
                                                                                                         Page 14

provisions of Title 18 of the United States Code, including mail and wire fraud. *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987).

A "pattern of racketeering activity" is defined as "at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5). "However, while two predicate acts are required under the Act, they are not necessarily sufficient." *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (citing *H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 237-38 (1989)). Instead, a plaintiff must show that the predicate acts are sufficiently related and create a threat of continuing criminal activity. *H.J. Inc.*, 492 U.S. at 240; *Durning v. Citibank Int'l*, 990 F.2d 1133, 1138 (9th Cir. 1993). (explaining that if the predicate acts are isolated or sporadic incidents, they do not amount to a pattern of racketeering activity). Application of these principles requires a careful review of the facts presented in each case. *See H.J. Inc.*, 492 U.S. at 242.

NP1 argues that the RICO claim must be dismissed because Mr. Okada fails to properly allege fraud. FAC ¶ 19. As noted above, this is not the case. Mr. Okada's allegations of fraud are sufficient to meet the 9(b) heightened pleading standard. Furthermore, Mr. Okada alleges that NP1 transmitted its misrepresentations via telephone and mail. *See* FAC ¶¶ 87, 98-99. Such transmissions amount to mail and wire fraud and are considered "racketeering activity" for the purposes of RICO. *See* 18 U.S.C. §§ 1343, 1961(1); *Sun Sav. & Loan Ass'n*, 825 F.2d at 191.

Additionally, Mr. Okada alleges that the misrepresentations were transmitted via telephone and mail in December 2009, FAC ¶ 62, March 2010, *id.* ¶ 52, and on multiple occasions from January to September 2010, *id.* ¶¶ 48, 87. The frequency with which Mr. Okada alleges these fraudulent communications took place satisfies the requirement that there be a "pattern" of racketeering activity. *See* 18 U.S.C. § 1961(5) (defining a "pattern of racketeering activity" as "at least two acts of racketeering activity" within a ten year period).

Finally, Mr. Okada alleges that NP1 and Deutsche Bank are an 'associated-in-fact' enterprise within the meaning of 18 U.S.C. § 1961(4). FAC ¶ 86. Although this may be seen as merely a conclusory recitation of the elements, *see Iqbal*, 556 U.S. at 663, Mr. Okada does allege details about their association. *See, e.g.*, FAC ¶¶ 20-21, 29-36, 86. Furthermore, Mr. Okada alleges that NP1 and Deutsche Bank instructed outside agents to perpetrate the fraud. *See id.* ¶ 42. Therefore, Mr. Okada sufficiently alleges the existence of an enterprise, a "union or group of individuals associate in fact" in his RICO claim. 18 U.S.C. § 1961(4).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-0307-DOC (DFMx)                                Date: September 24, 2014
                                                                                                                                                                                               Page 15

Accordingly, the Court DENIES NP1's motion to dismiss Mr. Okada's RICO claim.

### F. Civil RICO Conspiracy

To state a claim for violation of 18 U.S.C. § 1962(d), a plaintiff must plead that the defendants conspired to engage in a RICO violation. *See Resolution Trust Corp.*, 186 F.3d at 1117. Mr. Okada alleges that "[NP1] and Deutsche Bank agreed with each other to enter into a plan where they would use wire and mail fraud to misrepresent their plans for the construction of the Cosmopolitan to its purchasers." FAC ¶ 111. This allegation is, by itself, merely a legal conclusion of the sort prohibited by *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Elsewhere, Mr. Okada alleges that NP1 formulated the fraudulent scheme "with the full approval and participation by Deutsche Bank," FAC ¶ 97, that executives from NP1 and Deutsche Bank jointly developed a plan to downscale the Cosmopolitan while concealing the fact from the purchasers, *id.* ¶ 86, and that "[NP1] and Deutsche Bank agreed to mislead" all remaining purchasers by telling them that the Cosmopolitan was being built according to the original plan. *Id.* ¶ 41. All of these allegations are conclusory in nature and fail to nudge the claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

Because Mr. Okada's claim amounts to little more than a "formulaic recitation of the elements" of conspiracy, *id.* at 681, the Court GRANTS NP1's motion to dismiss Mr. Okada's RICO conspiracy claim. Dismissal without leave to amend is appropriate only when a court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003). Here, based on the paucity of conspiracy allegations and the fact that Mr. Okada has already had an opportunity to amend his complaint, the Court is satisfied that the deficiencies cannot be cured by amendment. The Court, therefore, DISMISSES Mr. Okada's RICO conspiracy claim WITH PREJUDICE.

### G. Transfer Venue

NP1 argues that venue should be transferred to the United States District Court of Nevada based on the mandatory Forum Selection Clause found within Mr. Okada's Purchase agreement. Mot. at 20. The clause states that "[v]enue for any action, litigation or proceeding arising out of or concerning this Agreement shall be in Clark County, Nevada. And the parties expressly waive their right to venue elsewhere." *Id.*

Mr. Okada argues that a forum selection clause applies only if resolution of the claims requires interpretation of the contract. Opp'n at 21. In support of this argument, he

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-0307-DOC (DFMx)  Date: September 24, 2014
Page 16

cites to *Manetti-Farrow, Inc. v. Superior Court. Id.* However, the clause in *Manetti-Farrow* specified that the selected forum would be used only for resolving disputes regarding "interpretation" or "fulfillment" of the contract. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 99th Cir. 1988). The forum selection clause contained in Mr. Okada's purchase agreement specifies venue for any litigation "arising out of or concerning" the agreement. Mot. at 20. Forum selection clauses that govern disputes "arising out of or relating to" the contract govern all claims that are significantly related to or have their "origin or genesis" in the contract. *See Cedars-Sinai Med. Ctr. v. Clobal Excel Mgmt., Inc.*, 2010 WL 5572079, at *5 (C.D. Cal. Mar. 19, 2010).

Given the broad language used in Mr. Okada's purchase agreement, his tort claims are subject to the forum selection clause. Although the claims are not breach of contract claims, they do "arise out of" the contract. All of the damages claimed by Mr. Okada result from the purchase agreement. Because this is the case, the Court hereby GRANTS NP1's motion to transfer venue to Nevada.

## IV. Disposition

For the reasons explained above, the Court DENIES NP1's Motion to Dismiss concerning Mr. Okada's fraud, negligent misrepresentation, and civil RICO claims and GRANTS NP1's Motion to Dismiss Mr. Okada's RICO conspiracy and unfair competition claims. Mr. Okada's unfair competition claim is DISMISSED WITHOUT PREJUDICE and he has leave to amend; his Second Amended Complaint shall be filed on or before October 20, 2014. Mr. Okada's RICO conspiracy claim is DISMISSED WITH PREJUDICE.

However, the Court GRANTS NP1's Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) and hereby orders this case transferred to the United States District Court for the District of Nevada, Las Vegas Division.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11
CIVIL-GEN                    JS-6            Initials of Deputy Clerk:  djg